UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN I. FELDHAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-01259-TAB-JMS |
| | ) | |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | | |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I. Introduction**

Plaintiff John Feldhake appeals the Administrative Law Judge's denial of his

period of disability and disability insurance benefits application. Feldhake's alleged

impairments include: multilevel cervical spondylosis with congenitally small canal;

lumbar spine dysfunction described as multiple level changes with degenerative disc

disease at T10-11 and throughout the lumbar spine resulting in mild spinal stenosis; and

mental impairments variously assessed as mood disorder, cognitive disorder, and

antisocial behavior. On appeal, Feldhake raises four issues: (1) whether the ALJ

erroneously assessed Feldhake's migraine headaches; (2) whether the ALJ adequately

addressed Feldhake's impairments under the listings without summoning a medical

advisor; (3) whether the ALJ failed to articulate Feldhake's residual functional capacity

and logically bridge the evidence to her conclusion; and (4) whether the ALJ's credibility

determination was erroneous. For the reasons set forth below, Plaintiff's brief in support

of appeal [Filing No. 21] is denied and the Commissioner's decision affirmed.

## II. Discussion

### A. Standard of review

The Social Security regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: whether the plaintiff (1) is currently unemployed; (2) has a severe impairment; (3) has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work in the national economy. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–13 (7th Cir. 2009). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.*

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ, however, need not mention every piece of

evidence, so long as she builds a logical bridge from the evidence to his conclusion. *Pepper*, 712 F.3d at 362.

### B. Migraine headaches

At step two, the ALJ found that Feldhake's headache syndrome was not severe given that there was very little in Feldhake's treatment notes regarding his headaches and no abnormal findings. Feldhake argues that the ALJ's discussion of his headaches was erroneous as she incorrectly dismissed Feldhake's complaints. The ALJ allegedly ignored Feldhake's statement that some of his headaches caused him to vomit, and Feldhake argues that this error warrants remand. However, the Court is not convinced that remand on this issue is appropriate. For one, the ALJ found Feldhake had other severe impairments that obligated her to proceed to steps three, four, and five, where she had to consider all relevant medical evidence in making her final determination, including Feldhake's headaches. *See Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (finding that as long as the ALJ determined that the claimant has one severe impairment, the error at step two is harmless as she is obligated to consider all relevant medical evidence in steps three, four, and five); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe.").

Moreover, the ALJ's decision discussed other evidence of Feldhake's headaches. The ALJ noted that Feldhake was assessed with headache syndrome and post-concussive syndrome in December 2009 and was prescribed pain medication. She indicated that his January 2010 and February 2010 exams were unremarkable,

despite the fact that Feldhake's doctor assessed him with headaches secondary to trauma. [Filing No. 16-2, at ECF p. 26; Filing No. 16-9, at ECF p. 79-80; Filing No. 16-12, at ECF p. 42.] The ALJ relied on consultative examiner Mahmoud Kassab's evaluation during which Feldhake complained of headaches. However, Dr. Kassab found that Feldhake's head was atraumatic and normocephalic. [Filing No. 16-9, at ECF p. 75.]

Nevertheless, vomiting due to head pain certainly could affect Feldhake's capabilities in the workplace. In his May 11, 2010, psychological evaluation with Suzanne Leiphart, Feldhake stated, "I cannot get rid of the headaches. I get where I throw up they're so bad." [Filing No. 16-9, at ECF p. 97.] The ALJ mentioned Dr. Leiphart's psychological evaluation where Feldhake stated he had head pain, but the ALJ failed to include Feldhake's specific statement. The ALJ should have mentioned Feldhake's specific complaint as it contradicts her conclusion that his headaches were not severe. See *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.")

However, any error in failing to specifically address Feldhake's statement about vomiting is harmless as his statement was inconsistent with the medical evidence. At Dr. Kassab's exam, Feldhake denied having a history of blurry vision, nausea, or vomiting. [Filing No. 16-9, at 75.] Dr. Kassab found Feldhake's head to be atraumatic and normocelphic. There was no treatment prescribed for his headaches other than

pain medication for his general back, neck, and head pain in the record.[1]  Moreover, there was no evidence of light or sound sensitivity, or any other symptoms associated with severe headaches.  *See e.g., Keller v. Colvin,* No. 1:13-cv-00104-TWP-MJD, 2014 WL 948889 (Mar. 10, 2014) (noting that severe headaches under the Social Security's Program Operations Manual System include nausea, photophobia, and throbbing as symptoms); *Crowder v. Massanari,* No.00C5645, 2001 WL 649529 (N.D. Ill. June 8, 2001) (remanding the case because the ALJ failed to discuss the symptoms associated with claimant's severe headaches, including dizziness, light sensitivity, sound sensitivity, visual spots, slurring of speech, and numb hands).  Thus, remand is not appropriate on this issue.  *See McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) ("[The Court] will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.").

C.  *Summoning a medical advisor*

Feldhake next argues that the ALJ failed to adequately address whether he met or equaled a listing because the ALJ did not summon a medical advisor.  The Court should defer to an ALJ's decision whether to summon a medical advisor if she adequately explained how she reached her decision and she did not disregard medical evidence contrary to her conclusion.  *See Clifford v. Apfel,* 227 F.3d 863, 873 (7th Cir. 2000); *Thomas v. Astrue,* No. 1:09-cv-808-SEB-JMS, 2010 WL 2485556, at *5 (S.D. Ind. June 11, 2010).  In the case at hand, the ALJ considered the relevant medical evidence, including reports contrary to her conclusion.  The ALJ reviewed evidence of

---

[1]  At the hearing, Feldhake testified that he takes Fioricet for his headaches.  [Filing No. 16-2, at ECF p. 47.]  However, there is no record of this prescription in the medical evidence before the Court.

Feldhake's cognitive limitations. She noted that Feldhake had moderate difficulty in social, occupational, or school functioning, but hospital records showed that his mental status was normal, his memory intact, and his judgment and insight normal. [Filing No. 16-9, at ECF p. 103-104; Filing No. 16-10, at ECF p. 36-37.]

Similarly, the ALJ considered evidence of Feldhake's lumbar syndrome, cervical disc disease, and headache syndrome from May 2009 to July 2011. She reported that an MRI revealed Feldhake had multilevel cervical spondylosis superimposed on a small canal, most pronounced at the C5-6 level where there was mild flattening and deformity of the cord. [Filing No. 16-10, at ECF p. 49.] She noted that Feldhake had asymmetric stenosis of the right C5-6 neural foramen secondary to disc protrusion and uncovertebral hypertrophic change. At level L4-5, Feldhake had mild spinal stenosis. [Filing No. 16-10, at ECF p. 22, 24.] Otherwise, Feldhake's examinations were unremarkable, with no limitations on his gait, range of motion, and muscle strength. [Filing No. 16-10, at ECF p. 37, 45-46, 50; Filing No. 16-12, at ECF p. 3-25.] He had no ataxia or unsteadiness, could ambulate without use of an assistive device, was able to stand on his heels and toes, and had no deficits in his neurological examination. [Filing No. 16-9, at ECF p. 75-76.]

Feldhake argues that the ALJ improperly relied on the consultative examiner's reports when the medical experts did not sign a disability determination and transmittal form. However, consultative examiners R. Bond, F. Lavallo, and Amy Johnson submitted disability determination and transmittal forms along with their assessments finding no disability. [Filing No. 16-3.] *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (concluding that a physician who submits a disability determination and

transmittal form has considered the question of medical equivalence).  The ALJ considered the attached assessments as well as contrary evidence from treating physician Dr. Mark Hodgkin in making her determination.  She reviewed R. Bond's physical residual functional capacity assessment concluding that Feldhake was capable of performing light work.  [Filing No. 16-2, at ECF p. 26, 28.]  The ALJ assigned significant weight to Dr. Bond's assessment, which was later affirmed by state agency reviewer F. Lavallo.  She discussed Dr. Hodgkin's opinion that Feldhake could lift and carry ten pounds occasionally and less than ten pounds frequently and could only stand, walk, and sit for two hours in an eight-hour day.  The ALJ gave little weight to Dr. Hodgkin finding his opinion inconsistent with his examination notes.

Moreover, the ALJ considered Drs. Kassab's and Leiphart's opinions.  Dr. Kassab reported that Feldhake had no ataxia or unsteadiness, could ambulate with use of an assistive device, was able to stand on his heels and toes, and had no deficits in his neurological examination.  [Filing No. 16-2, at ECF p. 29.]  Dr. Leiphart's psychological evaluation concluded that Feldhake had cognitive limitations, poor concentration and racing thoughts.  Dr. Johnson affirmed Dr. Leiphart's determination that Feldhake had moderate difficulty in social, occupational, or school functioning.  The ALJ found Dr. Kassab's opinion broad and Feldhake's cognitive limitations not clearly defined, but she limited Feldhake's capabilities accordingly.

The ALJ supported her finding that Feldhake did not meet a listing with substantial evidence.  She considered the evidence contradicting her findings and had sufficient information without needing to summon a medical advisor.  Thus, the ALJ's decision not to summon a medical advisor was not in error.

*D.  RFC determination*

    Feldhake also appeals the ALJ's RFC determination as she failed to analyze
Feldhake's assessment function-by-function before making her RFC finding.  The
Commissioner argues that the ALJ did not err in her RFC determination as she provided
a narrative discussion of the evidence in the record to explain how the evidence
supported her finding pursuant to Social Security Ruling 96-8p.

    The ALJ need not articulate an RFC assessment using a function-by-function
assessment under Social Security Ruling 96-8p.  A narrative discussion of a claimant's
symptoms and medical source opinions is sufficient.  *Erwin v. Astrue*, No. 1:11-cv-0319-
DML-JMS, 2012 WL 896377 (S.D. Ind. Mar. 15, 2012); *Morphew v. Apfel*, No. IP 99-
655-CH/G, 2000 WL 682661, at *3 (S.D. Ind. Feb. 15, 2000) ("[A]n ALJ must explain
how the evidence supports [her] conclusions on the claimant's limitations and must
discuss the claimant's ability to perform sustained work activities.").  The ALJ did just
that.  She discussed Feldhake's examination immediately after falling from a truck and
injuring his back, during which he had back pain and tenderness but no fracture.  [Filing
No. 16-9, at ECF p. 16.]  The ALJ considered Feldhake's medical exams from 2009.
She noted that the physical exams were generally unremarkable, despite the fact that
Feldhake was prescribed muscle relaxants [Filing No. 16-9, at ECF p. 24, 33] and pain
medication due to mild tenderness of the paraspinal muscles, and was assessed with
headache syndrome, post-concussive syndrome, and cervical disc disease.  [Filing No.
16-9, at ECF p. 79-80; Filing No. 16-12, at ECF p. 42.]  The ALJ considered Dr.
Kassab's evaluation in March 2010, where he found Feldhake was not in any acute

distress, walked without assistive devices, could get off the exam table easily, and had an atraumatic and normocephalic head exam.  [Filing No. 16-9, at ECF p. 75.]

The ALJ discussed medical evidence from Feldhake's primary care provider.  His provider diagnosed Feldhake with lumbar syndrome and cervical disc disease with multilevel cervical spondylosis superimposed on a small canal specifically at C5-6 level along with asymmetric stenosis of the right C5-6 neural foramen secondary to disc protrusion and uncovertebral hypertrophic change.  [Filing No. 16-10, at ECF p. 48-49.] The ALJ noted that his provider prescribed Feldhake pain medication and referred him to a pain clinic, though he did not establish care with a pain clinic.  [Filing No. 16-10, at ECF p. 36.]  While his examinations noted that he has lumbar syndrome, cervical disc disease, and muscle cramps, he saw his provider for refills of his pain medication and had unremarkable exams.  [Filing No. 16-12, at ECF p. 2-8, 15-25.]  By 2011, his provider found cervical and lumbar tenderness with palpitation, but Feldhake was not limited in his range of motion, gait, or muscle strength.  [Filing No. 16-12, at ECF p. 29-35.]  Accordingly, the ALJ limited Feldhake to light work with the ability to occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit, stand, and walk six to eight hours in an eight-hour day, and an unlimited capacity to push and pull ten pounds frequently.  Feldhake could less than occasionally kneel and crawl, and occasionally stoop, crouch, and climb stairs and ramps.  [Filing No. 16-2, at ECF p. 25.]

The ALJ also reviewed Feldhake's mental impairments.  She discussed Dr. Leiphart's psychological evaluation, where Feldhake had difficulty with concentration, racing and obsessive thoughts, as well as rapid speech that was difficult to follow at times.  [Filing No. 16-9, at ECF p. 99.]  However, he denied any suicidal or homicidal

ideations.  [Filing No. 16-9, at ECF p. 99.]  The ALJ noted that Feldhake had moderate difficulty in social, occupational, or school functioning.  [Filing No. 16-9, at ECF p. 102-103.]  Even though the ALJ found that Feldhake's cognitive limitations were not clearly defined, the ALJ still accounted for such limitations in her RFC determination.  The ALJ found Feldhake capable of performing simple, routine tasks with the capacity for occasional interaction with coworkers and the general public meaning interaction for the completion of job tasks was limited to one-third of the work day.

The ALJ explained her reasoning for discrediting Dr. Hodgkin, who limited Feldhake to lifting and carrying ten pounds occasionally and less than ten pounds frequently.  The ALJ reasoned that Dr. Hodgkin had only seen Feldhake twice at the time he completed his evaluation and the reports from those two visits do not support the extreme limitations he assigned to Feldhake.  Indeed, Dr. Hodgkin's reports preceding his medical source statement diagnose Feldhake with headache syndrome, post-concussive syndrome, and cervical disc disease noting a lumbar T with spasms, but Feldhake's only constant complaint was medication refills.  [Filing No. 16-12, at ECF p. 20-24; 41-42.]  The ALJ also mentioned the third-party statement from Feldhake's sister, but discredited it as not supported by the objective medical evidence.  The ALJ provided a narrative discussion of Feldhake's symptoms and medical source opinions.  She supported her RFC finding with substantial evidence, and thus did not err.

### E. Credibility determination

Feldhake's final argument concerns the ALJ's credibility finding.  He argues that the ALJ failed to consider the Social Security Ruling 96-7p factors relevant to evaluating credibility, including: medical signs and laboratory findings; treating physician opinions;

the claimant's statements; third-party statements; prior work record and efforts to work; daily activities; longitudinal record of treatment; and attempts to seek treatment for pain. [Filing No. 26, at ECF p. 15.] Feldhake goes on to say that the ALJ made a half-hearted attempt to discuss the factors under Social Security Ruling 96-7p as she makes no mention of how frequent, intense, or long his bouts of severe pain are and failed to articulate stressors that would aggravate his impairments. The Commissioner asserts, and rightly so, that "the ALJ considered numerous factors in assessing Plaintiff's credibility, and Plaintiff does not elaborate upon his argument. Indeed, Plaintiff does not cite any other record evidence that he believe the ALJ overlook or that would support a finding of disability, as was his burden to do." [Filing No. 26, at ECF p. 17.] Feldhake also filed no reply brief challenging the Commissioner's assertions or providing additional argument or evidentiary citations in support of his position.

The ALJ contained specific reasons for her finding on credibility and supported it with evidence. *Porchaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). She found Feldhake's alleged limitations out of proportion to the limitations reasonably related to the medically determined impairments. In making this determination, the ALJ considered Feldhake's subjective complaints. Feldhake testified that he was injured while he was incarcerated and has since experienced pain that radiated his legs, head, and causes numbness in his hands. He used a cane to walk and has difficulty with his self-care, relying on his sister to care for him. He could not tie his shoes and used a special toilet. His medication made him drowsy and gave him gastrointestinal issues. Feldhake further testified that his memory and concentration were poor.

The ALJ also considered objective medical evidence, noting that the medical reports revealed Feldhake was able to walk, there was no fracture in his back, and his disc space was well maintained. [Filing No. 16-2, at ECF p. 26.] In 2009, Feldhake's physical exams were unremarkable. He had mild tenderness of his paraspinal muscles, at the base of his neck, and was prescribed pain medication. He was assessed with headaches secondary to trauma. [Filing No. 16-12, at ECF p. 41.] By 2010, his exams showed no acute distress, he had a normal gait, but maintained a painful facial expression with any activity. He had limited motion in his right shoulder, but otherwise maintained a normal range of mobility. [Filing No. 16-9, at ECF p. 76.] A 2010 MRI revealed a multilevel degenerative disc disease throughout the lumbar spine. [Filing No. 16-10, at ECF p. 25.] Soon thereafter doctors prescribed Feldhake medication and referred to a pain clinic. [Filing No. 16-10, at ECF p. 36.] But he never established care at the pain clinic and had ordinary examinations. While every visit in 2011 indicates that Feldhake had cervical and lumbar tenderness with palpitation, there were no documented limitations with his range of motion, gait, or muscle strength. [Filing No. 16-12, at ECF p. 2-15.]

The ALJ noted Feldhake's cognitive impairments. A May 2010 psychological evaluation revealed that Feldhake had poor judgment and insight at times, racing thoughts, and he was difficult to follow at times. He had a below-average memory and had moderate difficulty in social, occupational, or school functioning. [Filing No. 16-9, at ECF p. 97-105.] However, hospital reports found Feldhake's judgment to be normal and his memory intact. [Filing No. 16-10, at ECF p. 36-37.]

The ALJ considered Feldhake's daily activities.  Feldhake testified that he would perform household chores like washing dishes and cooking.  [Filing No. 16-2, at ECF p. 50.]  He could prepare his own meals, go shopping, watch television, and use the internet.  He maintained regular contact with his friends.  [Filing No. 16-7, at ECF p. 41, 43, 45.]  The ALJ also noted Feldhake's appearance at the hearing.  The ALJ found that Feldhake appeared slightly fatigued, but she did not witness any significant memory or concentration problems.

Absent a showing that the ALJ ignored other evidence in the record that would support a finding of disability, substantial evidence supports the ALJ's finding that Feldhake was not entirely credible.  She adequately explained her reasoning and discussed the factors set forth in Social Security Ruling 96-7p.  While the ALJ might not have discussed the factors to Feldhake's liking, she did discuss evidence of Feldhake's medical findings, treating physicians, Feldhake's statements, third-party statements, daily activities, the record of his treatment, and his attempts to seek treatment for pain.  Thus, the ALJ's credibility determination is not patently wrong, and remand on this issue is not appropriate.  *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

## III.  Conclusion

For the reasons stated above, Plaintiff's brief in support of appeal is denied [Filing No. 21] and the Commissioner's decision is affirmed.


Date:  8/27/2014

_____
Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov